IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1855.

## Clark *versus* Depew *et al.*

A conveyance of property, to be fraudulent as to creditors, should bear such a ratio to the indebtedness, as to tend directly to defeat the claims.

Where the attesting witnesses to a deed proved that no money was paid in their presence, at the time of its execution; the vendor being indebted to an amount equal to one-fourth the value of his property, the bulk of which was included in the deed; and the creditors being in pursuit of their claims, and numerous suits pending against him; and notice having been given to the vendee that he would be required to prove a consideration; it was *Held* that it was incumbent upon the vendee to prove a consideration by other evidence than the vendor's receipt.

A party to a suit cannot read in evidence his own answer to a bill of discovery filed in aid of the action.

A copy of a record from another state, certified to be a copy of the *judgment roll*, is sufficiently certified.

ERROR to the District Court of *Philadelphia*.

The plaintiff in error was defendant below. The action was ejectment, and was brought to recover possession of a lot of ground and five houses in the district of Kensington.

Both parties claimed under Benjamin Wilson. The plaintiffs had commenced an action against Wilson in the District Court in May, 1850, upon a judgment which they had obtained against him in the state of New York. The action was tried in October, 1850, and a verdict rendered for the plaintiffs for $2070. Judgment was entered December 10, 1850. On the same day they issued an execution, under which the sheriff levied upon the premises in

[Clark *v.* Depew.]

dispute, and sold them to the plaintiffs. The sheriff's deed to the plaintiffs was dated February 15, 1851. At the sheriff's sale, the defendant, Clark, gave public notice that the property belonged to him, having been conveyed to him by Wilson on the 7th August, 1850. This conveyance the plaintiffs alleged to have been made without consideration, and to be fraudulent and void. On the other hand, the defendant alleged that he had bought the property in good faith at a public auction, at which the same had been sold by Wilson, on the 25th June, 1850, and that he had paid in cash for the same, to Wilson, the sum of $10,200, and taken it subject to a mortgage of $3500. The validity of the deed to Clark was the chief subject of controversy upon the trial.

Upon the trial, the plaintiffs, after proving Wilson's possession, gave in evidence the record of the judgment and execution against Wilson, and the sheriff's deed to themselves, and rested.

The defendant then gave in evidence the deed from Wilson to himself, and the receipt for the purchase-money at the foot of it, and proved the notice given by the defendant at the sheriff's sale. The plaintiffs, to prove the prior indebtedness of Wilson, then offered in evidence exemplifications of the records of several judgments obtained against Wilson in the state of New York, in March, 1850. These were objected to: 1st, Because they were not properly certified; and, 2d, Because they were irrelevant. The certificate attached to the copies of the records was in these words:

"I, Robert Oakley, Clerk of West Chester county, and of the Supreme Court in and for the said county, in the second judicial district, do certify, that I compared the foregoing with the original judgment-roll now on file in my office, and that the same is a correct copy of the original, and of the whole of such original.

"In witness whereof I have hereunto set my hand and the seal of my office, as such clerk, this 31st day of August, 1851.

[L. S.]          "Signed,          ROBERT R. OAKLEY, Clerk."

To this was annexed the certificate of the presiding justice of the Supreme Court for that district, that Robert R. Oakley was, at the date of the certificate, a clerk of said Supreme Court, and that his attestation was in due form of law. The judge admitted the records, and the defendant excepted.

The plaintiffs also gave in evidence the records of actions upon these judgments in the Courts of Philadelphia, which actions were pending when the deed was made by Wilson to Clark. The plaintiffs then called the subscribing witnesses to the deed from Wilson to Clark, and to the receipt at the foot of it; also the alderman before whom the deed was acknowledged, and the conveyancer who had prepared it, all of whom testified that no consideration was paid in their presence. They then read a notice previously served upon the defendant, informing him that he would be required on the trial to prove what consideration was given by him

[Clark *v.* Depew.]

for the deed from Wilson, and called for proof of payment of consideration.

The defendant gave no proof of payment of consideration other than the receipt for the purchase-money, at the foot of his deed. He proved, however, that he had bid for the property at a public auction, advertised in the usual manner, and held by M. Thomas & Sons; that the same had been knocked down to him, and that other property of Wilson had been bid for and knocked down to another person at the same auction. He proved also, by the conveyancer, that the usual searches for liens had been made. The defendant then offered in evidence a bill of discovery filed against him by the plaintiffs, and his answer thereto. These were objected to, ruled out, and the defendant excepted.

HARE, J., then charged the jury as follows:—

"The evidence in this case shows that Wilson was indebted to the plaintiffs, and to other persons, at the time of making the conveyance under which defendant claims; and there are two questions for the jury—the one whether this conveyance is valid against the plaintiffs, if made without a valuable consideration; the other whether there was such a consideration. It is somewhat difficult to give a precise definition of the degree of indebtedness, which will render a valuable consideration necessary to the validity of a deed; but there can be no doubt, that this result will not follow from the existence of small or inconsiderable debts, such as every man may owe to his butcher or his baker, nor that when a man is largely in debt, he is not entitled to make any gift of his property of a nature to hinder and defeat his creditors and prevent them from obtaining payment. The question depends in a great measure on the ratio or proportion of the debts, not so much to the property he parts with, as to that which he retains.

"In the present case, Wilson's debts amounted to $4000 at the date of the deed. We have no evidence of the exact amount of assets, although it appears that he conveyed other property to Bell. If he received the consideration of this conveyance, it would of course be assets in his hands, but if he received it in cash, it might be less within the reach of his creditors than the estate for which it was the equivalent. It will be for you to say upon the evidence whether the conveyance to the defendant bore such a ratio to his property and his debts, as to tend directly to defeat the claims of those to whom he owed them. If it did, then it is invalid, unless founded upon a consideration. And this will bring you to the second question, whether there was such a consideration.

"The defendant alleges that there was; and relies to prove its existence upon the receipt at the foot of the deed. I find it difficult to tell you what weight you should give to this evidence.

[Clark *v.* Depew.]

It is certain that the receipt might have been written, although no consideration actually passed. So far as it has weight, it must owe it to the presumption in favour of fairness, and that things are as they appear to be on their face. You must weigh this presumption, and compare it with the probability or improbability that, if the defendant had given value, he could and would have proved it. I leave the question as one of fact to you. If you find under the instructions already given that the deed is without consideration and invalid unless it has one, your verdict will be for the plaintiffs, otherwise for the defendant."

The verdict was for the plaintiffs.

The defendant below assigned for error here the charge of the Court, and the ruling upon the admission and rejection of evidence, designated in the bills of exception above mentioned.

*St. George T. Campbell* and *H. M. Phillips*, for plaintiff in error.—The records from New York were not properly certified, and ought not to have been admitted. The clerk only certifies that it is a copy of the *judgment-roll*. It is not certified to be a copy of the whole *record*. The clerk certifies that the seal annexed is the seal of his office. He is clerk of the county as well as of the Court, and the seal is not stated to be the seal of the *Court*. The Act of 1790 requires the seal of the *Court* to be annexed. The bill of discovery, and defendant's answer thereto, were evidence. The bill was evidence as to the plaintiff's *admissions*, 1 *Greenleaf's Ev.*, § 212; and the answer was evidence, because, by examining the defendant, the plaintiffs admitted his competency. In Maclay *v.* Work, 10 *Ser. & R.* 194, a letter from a third person to the plaintiff was admitted in evidence, because he had himself given it in evidence on a former trial. If the bill was evidence, the answer was evidence as part of the same record.

The Court erred in leaving it to the jury to say whether or not Clark had paid a consideration. Wilson's receipt was *prima facie* evidence of the payment of consideration, and there was no evidence to rebut it: Wilson *v.* Howser, 2 *Jones* 116. Here was no evidence of fraud on the part of Clark, and no presumption could be raised against him, by reason of his neglect to prove actual payment. Fraud is not to be presumed. It is to be proved, Lutton *v.* Hesson, 6 *Harris* 109; and it is error to refer a fact to the jury of which there is no proof: Evans *v.* Mengel, 6 *Watts* 72. The defendant purchased at a public sale regularly advertised. The presumption is in favour of its fairness, and it was not necessary for him to prove actual payment of the money. Wilson's receipt was sufficient evidence of that fact, in the absence of any proof of fraud on the part of Clark.

[Clark *v.* Depew.]

*Thayer* (*Gibbons* with him), contrà.—The New York records were well certified. The *judgment-roll* is the whole record. The record is called at one stage of its progress the plea roll, at another the nisi prius roll, and when judgment is signed, the whole record is then called the judgment-roll: *Lil. Ab.* 491; 2 *Tidd Pr.* 931, 942; 1 *Arch. Pr.* 175; *Ib.* 225, 228; *Prac. Cas. K. B.* 153; King *v.* Bolton, 1 *Str.* 140; 6 *Mod.* 191; 3 *Bl. Com.* 24; 1 *Ld. Raym.* 243. See the form of the judgment-roll: 1 *Crompton's Pr.* 506, 508. In Pennsylvania judicial records are not enrolled; but in New York they are, and "judgment-roll" there, as in England, means the whole record: Barrie *v.* Dana, 20 *Johns. Rep.* 307; Croswell *v.* Byrnes, 9 *Johns. Rep.* 287; Lownds *v.* Renser, 7 *Wend.* 35.

The clerk certifies that the seal annexed is the seal of his office, which means, necessarily, that it is the seal of the *Court*. Besides, the presiding justice certifies that it is the seal of the Court.

That the bill of discovery is not evidence is expressly ruled by this Court: Owens *v.* Dawson, 1 *Watts* 149. Neither was the answer evidence. A party cannot give his own declarations in evidence to support his case. Upon that principle every affidavit of defence, and every plea, would be evidence for a defendant.

The charge of the Court was more favourable to the defendant than the law required. The Court left it to the jury to say whether any consideration was paid by Clark. The plaintiffs were entitled, under the circumstances, to a peremptory instruction, that the receipt was no evidence of payment against creditors, and that he was bound to give other proof of payment. Here was strong proof of fraud in Wilson—large previous indebtedness: Hamet *v.* Dundas, 4 *Barr* 182; Thompson *v.* Dougherty, 12 *Ser. & R.* 454; Keepner *v.* Burkhart, 5 *Barr* 479; Chambers *v.* Spencer, 5 *Watts* 404; Sanders *v.* Wagonseller, 7 *Harris* 252; suits pending against him when the deed was made: Twyne's Case, *Dyer* 295; *Rob. on Fr. Conv.* 576; 20 *Johns. R.* 11; 18 *Id.* 425; 2 *Pick.* 411; 2 *Amb.* 595; Babb *v.* Clemson, 10 *Ser. & R.* 424; Streeper *v.* Eckhart, 2 *Wh.* 307; Gans *v.* Renshaw, 2 *Barr* 36. The defendant was, under such circumstances, bound to show that he was a *bona fide* purchaser for value, and by other evidence than the written declaration of the fraudulent grantor: Rogers *v.* Hall, 4 *Watts* 359; Wilson *v.* Howser, 2 *Jones* 116; Zerbe *v.* Miller, 4 *Harris* 497; Union Canal Company *v.* Young, 1 *Wh.* 410; Bolton *v.* Johns, 5 *Barr* 145; Kimball *v.* Fenner, 12 *N. H. R.* 248; Snelgrove *v.* Snelgrove, 4 *Dess.* 287; Wheaton *v.* Sexton, 4 *Wheat.* 506. If Wilson made the deed with intent to defraud his creditors, the statute of Elizabeth avoided it. The words are, "shall be clearly and utterly void, frustrate, and of none effect;" and then a *proviso* in the 6th section excepts the case of a *bona fide* purchaser for value without notice: 2 *Stat. at*

[Clark *v.* Depew.]

*Large* 588; and it is well settled, that a party claiming under a *proviso* in a statute must bring himself within it: Rex *v.* Bryan, *Str.* 1101; Inman *v.* Barnes, 2 *Gall.* 319; Thompson *v.* Smith, 7 *Ser.* & *R.* 215; Brownfield *v.* Commonwealth, 13 *Ser.* & *R.* 238. The same principle is applied by the law in other cases: thus, where negotiable paper is put in circulation by fraud, the holder must show himself a *bona fide* holder for value: Holme *v.* Karsper, 5 *Binn.* 469; Beltzhoover *v.* Blackstock, 3 *Watts* 26. It is a canon of evidence, that the *onus* of proof is on the party who has cognisance of the fact: Dickson *v.* Evans, 6 *T. R.* 57. Here the defendant had express notice that he would be required to prove a consideration paid, and showed none.

The opinion of the Court was delivered by

KNOX, J.—Upon the trial of this cause, the plaintiffs below offered in evidence the records of certain judgments, obtained in the Supreme Court of the state of New York, against the defendant's vendor, Benjamin Wilson.

These were objected to: 1. Because they were not properly certified and authenticated. 2. Because irrelevant.

The certificate was in these words—

"I, Robert Oakley, clerk of West Chester county, and of the Supreme Court in and for the said county, in the second judicial district, do certify, that I compared the foregoing with the original judgment-roll, now on file in my office, and that the same is a correct copy of the original, and of the whole of such original.

"In witness whereof I have hereunto set my hand and the seal of my office, as such clerk, this 31st day of August, 1851."

(Signed) "ROBERT R. OAKLEY, clerk."

To this is annexed the certificate of the presiding justice of the Supreme Court for that district, that Robert R. Oakley was, at the date of the certificate, a clerk of said Supreme Court, and that his attestation was in due form of law. The objections to the authentication of these records are: 1. That it does not appear that the whole record is certified. 2. That the certificate is not under the seal of the Supreme Court.

In Pennsylvania, where the history of an action is not enrolled, the record consists of the papers properly filed in the cause, together with the docket; but in New York the practice is the same as in England, to make up a formal record, which is a "history of the most material proceedings in the cause, entered on a parchment roll," and when complete, by the entry of the judgment, is called the "judgment-roll," and no proceeding in a cause is matter of record until enrolled: Croswell *v.* Byrnes, 9 *J. R.* 287. The judgment-roll is the record, and the entire record remaining in the court. In particular stages of the case, records may be made up for certain purposes, such as the "*nisi prius* roll" for

[Clark v. Depew.]

the trial; but these records, in the end, are all superseded by the judgment-roll, and a correct copy of the whole of such roll is an entire copy of the record.

The clerk certifies that he is the clerk of the county of West Chester, and of the Supreme Court in and for said county, and that the seal attached is the seal of his office, as such clerk. From this it sufficiently appears, that the certificate is under the seal of the Supreme Court, for the second judicial district of New York.

The records were also offered, to prove that Wilson was largely indebted when he conveyed to Clark, and were certainly relevant in the issue then being tried.

The deed from Wilson to Clark was attacked, upon the ground that it was made to hinder, delay, and defraud creditors; and it was shown that, at the date of its execution, judgments had been obtained against Wilson in the state of New York, to the amount of between four and five thousand dollars, upon which several suits were then pending in Pennsylvania. It was also in evidence by the conveyancer who drew the deed, and by the alderman, before whom the acknowledgment was taken, and by the witness, to the deed and receipt, that no consideration passed between the parties in their presence. Notice had been given to the defendant some months before the trial, that he would be required to prove what consideration, if any, was paid by him to Wilson for the estate in dispute. No evidence was given to prove consideration, other than the usual receipt at the foot of the deed.

Upon this state of the facts, the judge of the District Court instructed the jury, that if they found that the conveyance from Wilson to Clark bore such a ratio as to tend directly to defeat the claims of his creditors, the deed would be void as to creditors, unless founded upon a consideration; and upon the question of the effect of the receipt, in establishing that a consideration had been paid, the charge was in the following words:—

"The defendant alleges that there was a consideration, and relies, to prove its existence, upon the receipt at the foot of the deed. I find it difficult to tell you what weight you should give to this evidence. It is certain that the receipt might have been written, although no consideration actually passed. So far as it has weight it must owe it to the presumption in favour of fairness, and that things are as they appear to be on their face. You must weigh this presumption, and compare it with the probability or improbability, that if the defendant had given value, he could and would have proved it. I leave the question as one of fact to you. If you find, under the instructions already given, that the deed is without consideration and invalid unless it has one, your verdict will be for the plaintiffs, otherwise for the defendant."

We can see no just cause of complaint which the defendant below can make to the manner in which these questions were sub-

[Clark *v.* Depew.]

mitted to the jury. If the deed was a voluntary one, and its effect was to hinder or delay creditors; in other words, if the transfer of this property would have the effect to prevent the collection of Wilson's debts, a vendee without consideration, whether there was fraud upon his part or not, would take no title as against creditors. There were circumstances attending the transfer from Wilson to Clark calculated to create suspicions as to *its* fairness. Wilson's large indebtedness; the pursuit of his creditors, who were just on the eve of obtaining liens upon his real estate; his anxiety to dispose of it, evidenced by his peremptory instructions to the auctioneer to sell; together with the proof that neither the scrivener, alderman, nor witness saw any money pass, required, at least, that Clark should place himself in the position of a *bonâ fide* purchaser, by showing that he had actually paid an honest price for the property in dispute; and this, too, by evidence other than the mere written declaration of his grantor. It rarely happens that a sum of money exceeding ten thousand dollars is paid by one man to another, in the purchase of real estate, without some one, other than the immediate parties, knowing the facts. In commercial cities, large sums usually pass through banks, or other places of deposit; and in recent transactions, the evidence, in nearly all cases, is within the reach of the parties. Wilson himself, if living (and we have no evidence that he is not), might have been called upon to prove that Clark had actually paid him the money stated in the receipt. Although the defendant was expressly notified that he would be required, upon the trial, to prove payment for his purchase, no evidence upon this subject, however remote, was given or attempted to be given by him. If he could have produced such evidence, and did not, the fault is his own; if he could not have produced it, may it not fairly be inferred, that no such payment was ever made? It was left to the jury, as a matter of fact, and found against him. We have no power to disturb the finding.

The question put to Daniel M. Fox was no part of the cross-examination, and therefore properly rejected. If it was important to show that the defendant had the means to make the purchase, it would have been properly rebutting to the plaintiff's evidence of fraud.

The bill of discovery filed by the plaintiffs, and the defendant's answer thereto, when offered together, were not evidence.

This disposes of the whole case.

Judgment affirmed.