# Appeal of Fowler *et al.* Fowler *et al. versus* Kingsley.

1. Where a debtor dies, under the acts which provide that all the debts of a decedent shall be a lien upon his real estate, for a period of five years after his death, a bill in equity will lie on the part of creditors who have not reduced their claims to judgment against one to whom the decedent, in his lifetime had conveyed land in fraud of said creditors, if the grantee was not a bona fide purchaser but knew of the fraudulent intent, and the court will decree such conveyance void, and that such land shall be subject to the debts of said creditors.

2. The mere fact that the claimants had not recovered judgment, is not sufficient to oust the equity jurisdiction of the Court of Common Pleas.

3. Pending the suit, the court properly enjoined the defendant from conveying or encumbering the land.

4. The deed in controversy was only void as to the complaining creditors. The quiescent creditors, if there be any, cannot take advantage of this proceeding, and after the payment of the claims of the complainants in the bill the land should be relieved from the injunction.

5. After the decree in this case, one who had purchased said land from the assignee in bankruptcy of the defendant, applied to the court and asked that the decree should be modified so that no sale of the land should be made until the temination of certain proceedings, in which the claims of the complainants in the bill would be ascertained. *Held*, that the defendant and those claiming the land under him had had their day in court, and the motion must be denied.

October 25th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Appeal from the Court of Common Pleas of *Erie county:* Of October and November Term 1878, No. 8. In Equity.

6 NORRIS—29

[Appeal of Fowler.]

Appeal of Justus Fowler and others, certain creditors of David Winton, deceased, from the decree of the court dismissing their bill in equity, wherein they prayed that a preliminary injunction might issue to restrain the defendant, Carlos M. Kingsley, from conveying or disposing of certain property of said Winton, deceased, which it was alleged he had fraudulently conveyed before his death to the defendant, Kingsley.

The substance of the bill and answer and of the master's report as presented and the other proceedings are sufficiently stated in the opinion of this court.

The following were portions of the opinion of Galbraith, P. J. :

"The bill in this case alleges in substance that the complainants are creditors of the estate of David Winton, deceased, and that said Winton in his lifetime made a conveyance to defendant of certain lands in Elk Creek township, Erie county, Pennsylvania, with intent to defraud the complainants and hinder and delay them in the collection of their debts, the defendant knowing of such fraudulent intention.

"The case was referred to a master, the answer of the defendant presenting merely a denial of the allegations of fact set forth in the bill. The report of the master made the deed fraudulent and void as against the complainants. To this report the defendant filed exceptions and raised the question of jurisdiction, which has now to be passed upon. Does this bill state such a case as is within the appropriate jurisdiction of a court of equity? The complainants are not judgment-creditors. They do not even claim that they have a suit pending, in aid of which the desired discovery is sought. Even the nature of the indebtedness does not appear and it is not stated whether their claim is upon note, bond, book-account or otherwise. The amount only is set forth as being 'the sum of $1600 in the aggregate.'

"It is claimed that fraud being alleged and proved, therefore the case comes within the jurisdiction of a court of equity, and the case of The Bank of Kentucky *v.* The Schuylkill Bank, 1 Pars. 222, is cited. * * * To give a court of chancery jurisdiction on the ground of fraud there must not only be fraud but the parties complainant must show such status and rights on their part as to entitle them to be heard in this court. The mere allegation of fraud is not enough. There is no similarity between the Kentucky Bank case and that now under consideration. It was not a bill to enforce the payment of a judgment out of lands claimed to belong to a debtor, but an attempt to call to account a fraudulent agent. It is true that fraud is one of the grounds for the exercise of chancery jurisdiction, and that the statute of 13th Elizabeth, making all conveyances made with intent to delay or defraud creditors null and void, is in full force in Pennsylvania. If the creditors complainant had pushed their alleged debts to judgment, and sold the land in

question to satisfy the same, the evidence adduced in this case before the master would have been relevant in trying the title thus acquired as against that of the alleged fraudulent grantee. But the question before us is whether the alleged fraud can be reached by the mode complainants have adopted. In other words, can a mere creditor, whose claim has never reached judgment, sustain such a bill as that in this case to try the title to real estate?

"The learned counsel has not cited us to any instance in which such a proceeding has ever been attempted, much less sustained; on the contrary, the rule and practice seems to be well settled that only a judgment-creditor can be entitled to the discovery and relief here sought, and where the object is to reach personal assets there must also have been an execution and a return of nulla bona before resort can be had to a court of chancery. In the case of Brinkerhoff v. Brown, 4 Johns. Ch. Rep. 671, the chancellor says: 'It is sufficient, however, to observe that I find the rule to have been long and uniformly established that to procure relief in equity by a bill brought to assist the execution of a judgment at law, the creditor must show that he has proceeded at law to the extent necessary to give him a complete title. If he seeks aid as to real estate he must show a judgment creating a lien upon such estate; if he seeks aid in respect to personal estate he must show an execution giving him a legal preference or lien upon the chattels.'

"This case of Brinkerhoff v. Brown, is cited with approval by Judge STRONG in Suydam v. Northwestern Ins. Co., 1 P. F. Smith 401. * * *

"In all the cases referred to the parties seeking the aid of courts of chancery were judgment-creditors. This is not the case of a creditor seeking discovery in aid of a pending suit at law, but that of an alleged creditor asking equity aid in enforcing and collecting a debt not yet judicially ascertained and which may on trial be found to have no legal existence. The defendant here is not presumed to know anything as to the validity or otherwise of the debt claimed, and of course could not answer upon that issue but only as to his own complicity in the alleged fraud. * * *

"And now, to wit, September 18th 1877, this cause having been argued upon the bill and answer and exceptions to the master's report, it is, after consideration, ordered, adjudged and decreed that the complainants' bill be dismissed and the injunction dissolved and that the complainants pay the costs."

*James C. & F. F. Marshall*, for appellants.—This case is within the jurisdiction of equity on the ground of fraud: Act of 13th of June 1840, Purd. Dig. 591; Act 14th February 1857, Purd. Dig. 592; Story's Eq. Jurisprudence, sect. 350; Brightly's Eq. Jurisprudence 69.

The Acts of Assembly have made sundry changes in the law

[Appeal of Fowler.]

making or creating the lien of creditors on the real estate of decedents since 1794. One feature in all the Acts of Assembly up to the last one of 1834, was that the debts of the decedent became a lien on the real estate of the decedent from his death, protecting all the creditors alike. A judgment recovered against the executor or administrator adds nothing to the lien of the creditor; all creditors of a decedent are placed on an equal footing in the distribution of the decedent's real estate, except those who had a lien by judgment or mortgage in the lifetime of the deceased.

We take it to be well settled upon authority that a court of equity will interfere and grant remedial justice whether the property could be reached by an execution at law or not, for otherwise a debtor under shelter of it might convert all his property into cash in defiance of his creditors, to the utter subversion of justice: 1 Story's Eq. Jurisprudence, sect. 368; Hadden v. Spader, 20 Johns. 563.

To oust the jurisdiction of equity the plaintiff's remedy at law must be full, complete and adequate: Skilton v. Webster, Bright. N. P. 203; Kirkpatrick v. McDonald, 1 Jones 387; Bank of the United States v. Biddle, 2 Pars. 31; Witman v. Lex, 17 S. & R. 91; Brightly's Eq. Jurisprudence, sect. 398; Weir v. Mundell, 3 Brow. 594; Henry v. Deitrick, 3 Norris 286.

[AGNEW, C. J.—When did Winton die? Under the intestate laws, have not these claims fastened upon his property as liens? The question in my mind is whether a creditor having an absolute lien for five years can prevent the land passing into the hands of any one except for value. The question is whether this five years lien does not cover this case. It is a question too whether this is not a bill for an injunction to prevent a fraud from being consummated, and not a bill of discovery at all.]

That is what it is.

*Vincent, Benson & Brainerd,* for appellee.—The testimony showed that Winton was living and kept house in Ohio. If the deceased owned land and owed debts in Pennsylvania, there must be a court here in which such claims could be adjudicated. There was no claim made in any court in the state by anybody in any way. A claimant must at least establish his claim upon the estate before he can have such process as here claimed. If they did not establish their claims they should have at least asked the benefit of an administration. They must do one or the other before they can proceed in equity. A question of fraud between debtor and creditor cannot be tried in a court of equity in this state: Winch's Appeal, 11 P. F. Smith 424. The question in this case cannot be tested in the way it is here sought to be. The parties here have no judgments, and cannot ask for the interposition of a court of equity.

[Appeal of Fowler.]

Mr. Justice PAXSON delivered the opinion of the court, November 11th 1878.

The bill in this case avers that the complainants are creditors of David Winton, deceased; that he died in December 1870, leaving no property for the payment of his debts; that at the time of his decease he was indebted to the complainants in the sum of $1600; that previous to the 25th of May 1870, the said Winton was the owner of a farm in the county of Erie, Pa., in fee-simple; that on said 25th of May the said Winton made a deed of conveyance of the said farm to Carlos M. Kingsley, his son-in-law, reciting a consideration of $4000; that said conveyance was made by the said Winton to the said Kingsley for the purpose and with the intention of defrauding the complainants, and to hinder and delay them in the collection of their debts against the said Winton; that the defendant knew of and was a participant in the fraud; that the complainants were informed and verily believed that the defendant contemplated and intended selling and conveying said land to a bona fide purchaser with a view of preventing complainants from collecting their claims against the decedent out of said property. The prayer of the bill was for a preliminary injunction restraining the defendant from conveying or in any manner encumbering the said real estate, and that upon final hearing the deed from the said Winton to the said defendant be declared null and void, and that the said land be made subject to the payment of said debts. The answer in general terms negatived the material allegations in the bill and especially ·the charge of fraud and collusion. The bill was referred to a master, who, after an investigation of the facts, found the fraud as charged by the complainants, and recommended a decree that the land be sold by the assignee in bankruptcy of the defendant, and the proceeds of the sale be applied first, to the payment of the costs of this case; secondly, to the claims of the complainants, and thirdly, to the creditors of the defendant. Upon exceptions filed the court below dismissed the bill, upon the single ground of, want of jurisdiction. That is the one question for our consideration.

While the learned judge admits that fraud is one of the grounds for the exercise of chancery jurisdiction, and that the statute of 13 Elizabeth, making all conveyances with intent to hinder, delay and defraud creditors null and void as to such creditors, is in force in Pennsylvania, he nevertheless held that the complainants ·had no standing in a court of equity because they were not judgment-creditors. We need not discuss the question as to how far the position of the court below might have been sustained had this bill been filed during the life of Mr. Winton. It may be that in such case the creditors would have been compelled to commence proceedings at law to establish their claims before filing their bill, though the statute of 13 Elizabeth extends the benefit of its provisions to all creditors alike, without regard to the character of their claims. But the

moment Mr. Winton died, his creditors of all classes became *lien* creditors under the Act of Assembly which provides that the debts of a decedent shall be a lien upon his real estate for five years after his death. We think, therefore, the mere fact that the complainants had not recovered judgment against Mr. Winton was not of itself sufficient to oust the equity jurisdiction of the court.

Fraud is one of the recognised subjects of equity jurisdiction. It is said by Judge Story, in his valuable treatise on Equity Jurisprudence, at § 350 : " It must be a fundamental policy of all enlightened nations to protect and subserve the rights of creditors, and a great anxiety to afford full relief against frauds upon them has been manifested not only in the civil law, but from a very early period, in the common law also." As a general rule courts of equity have jurisdiction to relieve against every species of fraud : Chesterfield v. Janssen, 2 Ves. 155. The jurisdiction is expressly given by our Act of 13th June 1840, Pamph. L. 671, and has been constantly and repeatedly exercised since that time. It is especially adapted to this class of cases. Its process is plastic and may be readily moulded to suit the exigencies of the particular case. A court of equity proceeds with but little regard to mere form. It moves with celerity and seizes the fruits of a fraud in the hands of the wrongdoer. So long as fraud forms one of our recognised heads of equity jurisdiction, the mere statement of the facts of this case forms a strong argument in favor of the right of the complainants to maintain their suit. And it must be conclusive unless they have a full and adequate remedy at law. Had they such remedy ? It was urged by the appellee that they should have brought suit at law against the administrator, if there be one, and if not, they should have raised up an administrator for that purpose. Such a proceeding would have been a vain thing and *lex neminem cogit ad vana seu inutilia.* Mr. Winton was domiciled in another state at the time of his death, and left no personal estate in Erie county. There was nothing to administer. There was no real estate of which he died seised. It had been conveyed by a deed, which however fraudulent as to creditors, was good against him, his heirs, executors and administrators : Williams's Adm'rx v. Williams, 10 Casey 312; Buchler v. Gloninger, 2 Watts 226 ; Stewart v. Kearney, 6 Id. 453. Whatever standing the administrator might have to impeach this deed would be derived solely from his position as trustee for the creditors defrauded. His intervention would not seem to be necessary if the creditors prefer to proceed themselves. Any attempt of the administrator to sell the real estate for the payment of the debts due complainants would be of little avail so long as it is covered by this fraudulent title. The purchaser would buy a lawsuit with no accurate means of judging of its value. In order to make the property available for the payment of the debts, it is necessary to remove the blot upon the title. This can only be effectually done by a court of equity.

Not only would a suit against the administrator have yielded no fruit, but I am unable to see that it could have been of any avail in this proceeding.    It would not have been evidence for any purpose against the defendant, for he would not have been either party or privy.    Notwithstanding a judgment against the administrator, the complainants would still have been compelled to prove their debts against Mr. Winton.    Nor could the costs of such a judgment have been recovered : Osgood *v.* Manhattan, 3 Cowen 612.

The complainants have no remedy against the heirs.    The plea of *riens per descent* would have been a sufficient answer to an action against them.

Equity furnishes the appropriate remedy for this case.    Its first move was to enjoin the defendant from conveying or encumbering the property pending the bill.    Without this the creditors might have been totally defeated by a sale to a bona fide purchaser.

It is not necessary to notice in detail the authorities cited by the appellee.    Nearly all of them relate to bills of discovery, and have no bearing upon the case.    Brinkeroff *v.* Brown, 4 Johns Ch. R. 671 ; Suydam *v.* Northwestern Ins. Co., 1 P. F. Smith 394 ; Hendricks *v.* Robinson, 2 Johns. Ch· R. 283 ; McElwain *v.* Willis, 9 Wend. 548, cited by the learned judge of the court below, were all cases of bills filed in aid of a judgment at law, and rest upon a different principle.    On the other hand Loomis *v.* Tifft, 16 Barb. 547, is directly in point, and rules that a creditor who has neither judgment nor lien can proceed in equity against the fraudulent grantee of a decedent.    We do not go so far.    Here the creditors had a lien, and we go no further than to say that having a lien they have a standing in court to maintain their bill.

While in no doubt as to the law of the case, we are embarrassed to some extent by the defective manner in which it was presented. We were furnished with an abstract only of the bill and master's report.    We find nowhere a full and distinct statement of the debts of the respective complainants beyond the averment in the bill that they aggregate about $1600, and the finding of the master stated argumentatively that the debt of Justus Fowler amounted to $712. He also finds that Winton was indebted to the complainants in the aggregate sum of $1600.    This is very loose and unsatisfactory. No statement or finding as to the nature and character of the claims, whether due on bond, bill, book account or otherwise.    All these matters should have been clearly averred in the bill and found by the master.    As, however, the master has substantially found the facts necessary to give the court jurisdiction, and to justify a decree, we are indisposed to turn a case out of court that has substantial merit on account of the defects referred to.

The only remaining question is as to the form of the decree. The deed in controversy is void only as to the complaining creditors.    The quiescent creditors, if there be any, cannot take advan-

tage of this proceeding.    This is settled by Shulze's Appeal, 1 Barr 251, and Tomb's Appeal, 9 Id. 61.    It is apparent then that after paying first, the costs of this proceeding, and second, the respective claims of the complainants, the real estate in question ought to be released from the injunction.    Opportunity should be given to the defendant or his assignee in bankruptcy to make such payment. We, therefore, enter the following decree :

> This cause came on to be heard at the October and November Term of this court, at the city of Pittsburgh, and was argued by counsel, whereupon this 11th day of November 1878, it is considered and adjudged by the court that the decree of the court below be reversed at the costs of the appellee ; that the deed from David Winton to Carlos M. Kingsley, dated the 25th of May 1870, conveying 166 acres of land in Erie county, Pennsylvania, be and the same is declared null and void as against the complainants in this bill; that the injunction heretofore issued be made perpetual, unless the defendant or his assignee in bankruptcy shall, within ninety days from the filing of this decree, pay the costs of this proceeding, and the respective claims of the complainants in full; and in case such payment shall not be made within ninety days, as aforesaid, then it is further ordered and decreed that the real estate described in said deed be sold by the administrator of David Winton, deceased, if there be one ; and if not, by a trustee to be appointed by the court below, for the purpose of paying the debts of the complainants and the costs of this proceeding.

On the 29th of November Mr. Justice PAXSON filed the following additional opinion :

After the above case was decided, and during the present term of the court, an application was made on behalf of E. T. Montague to modify our decree so that no sale of the real estate in controversy shall be made until after the claims of the complainants shall have been legally ascertained.    It was alleged in support of this motion that the said Montague purchased said real estate from the assignee in bankruptcy of said Carlos M. Kingsley ; that suits have been commenced at law by some of the complainants against the administrator of said David Winton, deceased, to which suits said administrator has made an affidavit of defence; and that until the amount of said claims can be ascertained, the said Montague cannot decide whether it is to his interest to pay the same, or to suffer said real estate to be sold.

The validity and amount of the claims referred to was one of the questions directly involved in the bill in equity.    Until the cred-

[Appeal of Fowler.]

itors established their claims the court had no jurisdiction to declare the deed void.    The master finds that Justus Fowler's debt amounts to $712, and that the claims aggregate some $1600.    This was not a very clear finding, but we have only that portion of the master's report that bears upon the question of fraud, and there was no exception filed in the court below that the master did not find the amount of the respective claims with sufficient accuracy, or that he found them upon insufficient evidence.    Upon this question, therefore, Carlos M. Kingsley and those claiming this land under him have had their day in court.

The motion is denied.