# Orr *v.* Peters.

*Mortgage—Fraud—Postponement—Equity.*

A bill in equity to restrain the assignment of a mortgage and to postpone the mortgage to a judgment later in date owned by the complainant, will be sustained, and a decree entered in accordance with its prayers, where the evidence shows that the mortgagor and the mortgagee were jointly interested in the development of mineral lands which they owned; that the money advanced by the mortgagee was his share of the capital used in the enterprise; that it was not advanced with the intention that any part of it should be repaid; that there had been no accounting or ascertainment of an amount due; that the mortgage was largely in excess of the advances made and of the value of land; and that it was given by the mortgagor at a time when he was disposing of his personal property and incumbering his real estate in anticipation of an adverse result of litigation in which he was involved with the complainant.

*Equity—Jurisdiction—Injunction—Mortgage—Remedy at law.*

Where jurisdiction of equity has attached for the purpose of restraining an assignment of a mortgage, it will continue and settle a controversy between the parties as to whether the defendant's mortgage alleged to be fraudulent should not be postponed to plaintiff's judgment junior in time.

*Equity—Concurrent jurisdiction of law and equity—Fraudulent conveyance—Doubtful title.*

Equity has concurrent jurisdiction with law where property has been fraudulently conveyed or incumbered in order to defeat the claims of creditors. A creditor will not be compelled to sell a doubtful title under proceedings at law, but the conveyance or incumbrance will be set aside.

Argued Oct. 15, 1900. Appeal, No. 48, Oct. T., 1900, by defendant, from decree of C. P. Beaver Co., June T., 1896, No. 2, on bill in equity in case of James L. Orr *v.* John R. Peters and Frank E. Simpson. Before McCollum, C. J., Mitchell, Fell, Mestrezat, Brown and Potter, JJ. Affirmed.

Bill in equity for an injunction to restrain assignment of mortgage and to postpone mortgage to complainant's judgment. Wilson, P. J., found the facts to be as follows:

### FINDINGS OF FACT.

1. In the year 1880 the defendant, John R. Peters, and Michael H. Simpson, the father of the other defendant, and

Chester B. Lawrence were the owners as tenants in common of certain lands situate near Georgetown, Beaver county, Pennsylvania.

2. James L. Orr entered upon said lands under a lease from John R. Peters, obtained prior to 1880, and made valuable improvements upon said land in developing the mines. At this time John R. Peters and Chester B. Lawrence being cotenants of the premises, and after Orr had thus expended a considerable sum of money in good faith, he was forcibly dispossessed of the premises by the defendant, Peters.

3. Two suits were brought by Orr against Peters, the one an action of trespass at No. 342, and the other an action of assumpsit at No. 343, March term, 1888, to recover damages for the wrongful eviction.

4. These cases were put at issue, and that at No. 343, March term, 1888, was set down for trial at the special term for January 13, 1890, and on the 20th day of the same month the jury were selected for the trial of the case, and the 4th day of February was fixed for the trial, and verdict rendered for the plaintiff on February 8, for $7,865.51, which was reduced by the court to $4,910, and judgment entered thereon.

5. On January 2, 1890, John R. Peters executed a mortgage to the defendant, Frank E. Simpson, for the sum of $20,000 upon Peters's undivided one-third interest in said coal land, and the said mortgage was recorded on January 27, 1890, between the time of the selection of the jury and that fixed for the trial.

6. On the same date the defendant, John R. Peters, executed another mortgage to Chester B. Lawrence, a nephew by marriage, purporting to secure the payment of $4,500 upon a house and lot in Georgetown, Beaver county, Pa.; this mortgage was recorded on January 27, 1890.

7. On February 1, 1890, John R. Peters executed to Elizabeth Calhoun, his mother-in-law, a judgment note for $50.00, which was filed February 7, 1890, at No. 284, March term, 1890, and on February 3, 1890, he executed to Lizzie Peters, his sixteen-year-old daughter, a judgment note for $250, which he filed on February 4, the day upon which the trial began; and execution was issued on the same at No. 96, March term, 1890, on which all his personal property was seized and taken in execution, and sold, and purchased in the name of the daughter,

who receipted for the property, and the same remained in the house of Peters afterwards as before, and he has still in possession and is using such of the property as has not been worn out or consumed.

8. On February 1, 1890, Mr. Peters executed another judgment to his brother-in-law, Smith Curtis, for $150, which was entered on February 7, 1890, at No. 285, March term, 1890.

9. All the property that Peters owned at the time that he gave said mortgages and judgment notes and issued the writ of execution was the real estate covered by said mortgages, and a few household goods and tools seized by virtue of said writ.

10. The interest in the coal land covered by the Simpson mortgage was worth about $7,000, and the house and lot covered by the Lawrence mortgage was worth anywhere from $1,700 to $2,500, and the value of the personal property was small.

11. The defendants knew the suits of Orr were pressing and that a large amount of damages, perhaps more than the entire value of Peters's property, was claimed against Peters ; and at this time John R. Peters divested himself of his personal property by causing the same to be sold upon execution in favor of his daughter, and gave judgments and mortgages upon his real estate to his relatives and business partners for more than double the value thereof.

12. At the time of the giving of the mortgage in question Michael H. Simpson, former partner of John R. Peters in his operations for mining, and cotenant in the land covered by the mortgage, had died, and was succeeded by Frank E. Simpson, a son of his, as executor, and afterwards by an arrangement with the other heirs, in the place of his father representing his entire interest.

The mortgage for $20,000 was given in pursuance of the following letter :

"BOSTON, November 7, 1889."

"JOHN M. BUCHANAN,

"Beaver, Pa.

"Dear Sir : Mr. John R. Peters has informed me that two suits have lately been commenced against him at Beaver for evicting a man seven or eight years ago from a coal mine on the mineral land he is interested in near Georgetown, Pa., and that the

damages claimed are respectively $20,000 and $50,000. To provide against a possible adverse verdict Mr. Peters wishes to secure me for cash advances made to him by my father and myself within the last ten years, which, with interest thereon, amounts to upwards of $20,000. Please make out and have Mr. Peters execute such papers as you consider necessary to secure me (as far as possible), have them properly recorded and forwarded to me.

"Respectfully yours,

"FRANK E. SIMPSON."

CONCLUSIONS OF LAW.

1. A partnership relation existed between Michael H. Simpson and John R. Peters, and the moneys advanced by Michael H. Simpson and his executor was their share in the partnership formed for the purpose of developing certain lands for coal near Georgetown, in this county.

2. That the mortgage for $20,000, dated January 2, 1890, executed by John R. Peters in favor of Frank E. Simpson is void as to James L. Orr, and the lien of the same is postponed to the lien of the judgment obtained by James L. Orr v. John R. Peters, at No. 343, March term, 1888.

3. The costs of these proceedings should be paid by the defendants.

REMARKS.

It is scarcely necessary to discuss the testimony in this case at any length, as Mr. Peters testified upon examination that the moneys which he received from Michael H. Simpson, and subsequently of his executor, Frank E. Simpson, were in the development of the land in question for coal, and as partners; and that the moneys advanced for that purpose by Michael H. Simpson, and others for him, was his interest in the mine, as against the engineering skill and superintendency of John R. Peters. The testimony of Mr. Peters, both in this case and also in that at No. 1, June term, 1896, in equity, was to like effect. It is true that Mr. Peters, after a recess during the taking of the testimony in this case, somewhat modified his testimony, yet in answer to question after question, as shown upon page after page of the testimony, under cross-examination in this case, he considered Michael H. Simpson a partner,

and treated the moneys advanced by Michael H. Simpson as his share in the development and operation of the coal mines upon the land as above stated. The court is clearly of the opinion that the evidence introduced by the defendants does not overcome the presumption that the mortgage in question was given for the purpose of hindering, delaying and defrauding James L. Orr, the plaintiff in this case. All the circumstances attendant upon the giving of these mortgages and judgments upon the eve of the trial of the case of James L. Orr against John R. Peters, the circumstances attending the advancing of the money, no security having been given until this suit was brought, no demand for any payment having been made, and the purpose for which the mortgage was asked by Frank E. Simpson, one of the defendants, as shown by his letter of November 7, 1889, to John R. Peters's attorney; the fact that since the giving of said mortgage no part of the principal or interest has been paid or demanded, are all circumstances in corroboration of the position that this mortgage was given for the purpose of preventing the collection of the judgment obtained by James L. Orr against John R. Peters, as above stated.

There is no evidence in this case that any settlement was ever had between Peters and Simpson, and no amount was acknowledged on the part of Peters to be due Simpson or his estate until the execution of the mortgage in question. From the evidence it appears that Michael H. Simpson and his executors advanced large sums of money, but that is not material in this case, as we cannot tell what results were expected by him from the mining venture; and there is no doubt but that Mr. Peters and the others interested were picturing to themselves wonderful results from the development of these mines; and many things with greater prospects of big returns have been unsuccessful.

ORDER.

And now, January 30, 1890, plaintiff's counsel are directed to draw up a decree in conformity with this opinion postponing the lien of the mortgage from John R. Peters to Frank E. Simpson, dated January 2, 1890, for $20,000, to the lien of the judgment of James L. Orr against John R. Peters at No. 343, March

term, 1888, and the judgments upon sci. fa. thereon, and that the preliminary injunction continue until final decree and note thereof be made upon the record of said mortgage.

The following decree was subsequently entered:

And now, to wit: February 5, 1900, this cause came on to be heard, on bill, answer and proofs, and after argument of counsel, upon due consideration, the court make and enter the following decree:

1. That the mortgage from the defendant, John R. Peters, to the defendant, Frank E. Simpson, bearing date January 27, 1890, for $20,000, and recorded in the office for recording deeds, etc., in and for the county of Beaver, in mortgage book, volume 37, page 27, is fraudulent and void, as against the complainant, James L. Orr.

2. That the lien and operation of said mortgage be, and the same is postponed to the lien of the judgment of A. J. McKinley for use of James L. Orr versus John R. Peters, in the court of common pleas of Beaver county, at No. 343, March term, 1888, for the sum of $4,910, and to any and all revivals of said judgment by scire facias thereon. And the prothonotary is directed to certify this decree to the recorder of deeds of said county, to the end that such postponement may be noted upon the margin of the record of said mortgage.

3. That the defendants pay the costs of these proceedings, including reasonable costs to the plaintiff in this behalf expended.

*Error assigned* was the decree of the court.

*William M. Hall, Jr.,* with him *Horace J. Miller, John M. Buchanan* and *William A. McConnel,* for appellants.—The circumstances as to the taking of the mortgage do not show the slightest attempt to perpetrate a fraud or unduly prefer Simpson's estate or hinder or delay Orr: Davis v. Charles, 8 Pa. 82; Hopkins v. Beebe, 26 Pa. 85; York County Bank v. Carter, 38 Pa. 446; Keen v. Kleckner, 42 Pa. 529; Mead v. Conroe, 113 Pa. 220; Werner v. Zierfuss, 162 Pa. 360; Penn Plate Glass Co. v. Jones, 189 Pa. 290; Candee & Co.'s App., 191 Pa. 644; Thornburn v. Thompson, 192 Pa. 298.

Aside from the case on its merits, the court was entirely

wrong in holding that it had jurisdiction. The only method to attack this mortgage was by Orr issuing upon his judgment and selling out Peters's interest in the real estate, and if he did not make his money on his execution, he could buy in the real estate and defend against the mortgage, proceeding, if necessary, under the Act of May 25, 1887, P. L. 270: Ballentine v. Ballentine, 15 Atl. Repr. 959; McAllister v. Marshall, 6 Binn. 338; Johnston v. Harvy, 2 P. & W. 82; McClurg v. Lecky, 3 P. & W. 83; Stewart v. Coder, 11 Pa. 91; Hennon v. McClane, 88 Pa. 219; Sanders v. Wagonseller, 19 Pa. 248; Hoffman's App., 44 Pa. 95; Taylor's App., 8 W. N. C. 192; Fowler's App., 87 Pa. 449; Houseman v. Grossman, 177 Pa. 453; Appeal of Girard Nat. Bank, 13 W. N. C. 101; Clark's App., 62 Pa. 450; Haak's App., 100 Pa. 62; McKee v. Gilchrist, 3 Watts, 230; Biddle v. Tomlinson, 115 Pa. 299; Buck Mountain Coal Co. v. Conard, 6 Phila. 111.

*R. S. Holt*, with him *Geo. R. Wilson*, for appellee.—Under the evidence the transfer of the property is prima facie without consideration, fraudulent and void as to the creditor whose suit is pending, and the burden is upon the grantee to satisfy the court that the transaction was fair and honest: Redfield & Rice Mfg. Co. v. Dysart, 62 Pa. 65; Kaine v. Weigley, 22 Pa. 179.

If there be evidence tending to show want of consideration, excessive amount, some advantage or benefit to the debtor beyond the discharge of his obligation, or some benefit to the creditor beyond payment of his debt, or some injury to the other creditors beyond postponement, the transaction will be deemed fraudulent: Ashmead v. Hean & Moulfair, 13 Pa. 584; Confer v. McNeal, 74 Pa. 112; Lowe v. Dalrymple, 117 Pa. 564; Montgomery Web Company v. Dienelt, 133 Pa. 585; Kane v. Weigley, 22 Pa. 179; Clark v. Douglass, 62 Pa. 408; Warner v. Hare, 154 Pa. 548; Steinmeyer v. Seibert, 190 Pa. 471; Stockett v. Ryan, 176 Pa. 71; Hancock v. Melloy, 187 Pa. 371.

There is no plain, complete and adequate remedy at law by which we could be relieved as against said mortgage: Fowler's App., 87 Pa. 449; Bierbower's App., 107 Pa. 14; Dull's App., 113 Pa. 510; Appeal of Brush Electric Light Co., 114 Pa.

574; Mortland v. Mortland, 151 Pa. 593; Johnston v. Price, 172 Pa. 427; Houseman v. Grossman, 177 Pa. 453; People's Nat. Bank of Pittsburg v. Loeffert, 184 Pa. 164; Cairns v. Ingham, 8 Pa. Superior Ct. 514; Clark v. Gibson, 10 W. N. C. 522; Barlott v. Forney, 187 Pa. 301; Brewer's App., 104 Pa. 417.

The extension of the remedy at law to cases originally within the jurisdiction of a court of equity is no bar to a chancery proceeding for the same cause: Johnston v. Price, 172 Pa. 427; Wesley Church v. Moore, 10 Pa. 273.

OPINION BY MR. JUSTICE FELL, January 7, 1901:

There is not a specific finding by the court that the mortgage, whose validity is in question, was given to hinder, delay or defraud creditors, but from the findings made, it necessarily follows that it was given for that purpose. The substance of the findings of fact is that Peters and Simpson were jointly interested in the development of mineral lands which they owned; that the money advanced by Simpson was his share of the capital used in the enterprise; that it was not advanced with the intention that any part of it should be repaid; that there had been no accounting or ascertainment of an amount due, and that the mortgage was largely in excess of the advances made and of the value of the land; that it was given by Peters at a time when he was disposing of his personal property and incumbering his real estate in anticipation of an adverse result of litigation in which he was involved with the plaintiff. These findings are fully sustained by the testimony. There was enough in the circumstances alone to rebut the presumption of fairness and good faith and to require affirmative proof of both by the defendants: Kaine v. Weigley, 22 Pa. 179; Clark v. Depew, 25 Pa. 509; Redfield & Rice Mfg. Co. v. Dysart, 62 Pa. 62. If there was no debt there was no consideration for the mortgage, and presumptively it was fraudulent and given to hinder and delay the plaintiff in his effort to collect his claim against Peters. The attempt by the defendants to explain the transaction only tended to strengthen the prima facie case against them.

The court had jurisdiction to prevent by injunction an assignment of the mortgage. This was the first step made by the plaintiff in order to protect his rights, and the jurisdiction of

equity having attached for this purpose would continue and settle the whole controversy: Allison's Appeal, 77 Pa. 221. But it is wholly unnecessary that the jurisdiction in equity should be sustained on any narrow or technical ground. Equity has concurrent jurisdiction with law where property has been fraudulently conveyed or incumbered in order to defeat the claims of creditors. A creditor will not be compelled to sell a doubtful title under proceedings at law, but the conveyance or incumbrance will be set aside. " Where property which is legally liable to be taken into execution has been fraudulently conveyed or incumbered, the jurisdiction is concurrent, as the creditor may either issue execution at law, or file a bill in equity to have the conveyance set aside: " Bispham's Equity, sec. 242. The general rule is thus stated in Sexton v. Wheaton, 1 Am. Leading Cases, 54 : " There are two cases in which a creditor may go into equity to obtain satisfaction out of property fraudulently settled or conveyed ; one where the transaction has assumed such form or the property is of such a nature that it was never subject to an execution at law, and in this case the remedy is only in chancery ; the other, where property legally liable to execution has been fraudulently conveyed or incumbered, for though the property might be sold on an execution at law against the debtor, yet equity will not require the creditor to sell a doubtful or obstructed title at law, but will set aside the conveyance." Fowler's Appeal, 87 Pa. 449, is an example of the exercise of equitable jurisdiction under similar facts in this state. The concurrent legal remedy open to the plaintiff was neither plain, adequate nor complete.

The decree is affirmed at the cost of the appellant.