## Monroe, Appellant, v. Monroe (No. 2).

*Equity—Injunction—Partition—Fraud—Decedent's estates.*

A court of equity has jurisdiction to restrain the sale of the real estate of a decedent who in his lifetime has conveyed the same to another, with a view of defrauding his creditors, the vendee or grantee in the deed having knowledge of the fraud and the estate of the decedent being insolvent, particularly where the creditor has a lien upon the land ; but this rule has no application to a case where a person seeking by bill in equity to enjoin partition proceedings alleges that he and decedent were jointly liable as executors, that the land was conveyed by decedent for the purpose of escaping liability and that if judgment were entered against the executors, the complainant would become a creditor by subrogation of the decedent's estate, without any allegation, however, that he had paid anything, that he was liable to pay anything, that he would pay anything, or that he could pay anything.

Argued, Jan. 14, 1904.    Appeal, No. 33, Jan. T., 1904, by plaintiff, from decree of C. P. Luzerne Co., May T., 1902, No.

10, dismissing bill in equity in case of H. H. Monroe v. Mary A. Monroe. Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ. Affirmed.

Bill in equity for an injunction to restrain partition proceedings.

The facts appear by the opinion of the Superior Court.

*Error assigned* was decree of the court.

*W. Alfred Valentine,* with him *L. Floyd Hess,* for appellant.

*G. J. Clark,* for appellee.

Opinion by Beaver, J., July 28, 1904 :

A court of equity undoubtedly has jurisdiction to restrain the sale of the real estate of a decedent who in his lifetime has conveyed the same to another, with a view of defrauding his creditors, the vendee or grantee in the deed having knowledge of the fraud and the estate of the decedent being insolvent, particularly where the creditor has a lien upon the land : Fowler's Appeal, 87 Pa. 449 ; Houseman v. Grossman et al., 177 Pa. 453 ; Cairns v. Ingram, 8 Pa. Superior Ct. 514. See also Orr v. Peters, 197 Pa. 606.

Does the plaintiff here come within the protection of these and similar cases ?

The plaintiff alleges in his bill that he and his brother W. R. Monroe acquired title by descent from their father, S. F. Monroe, deceased, " to a certain farm in the township of Huntington, known as the Monroe homestead and, excepting said farm, there remains no further estate of said S. F. Monroe, deceased, to satisfy any judgment that said Rolla B. Watson may secure in his suit on a bond given by said S. F. Monroe in his lifetime as the surety of A. B. Watson, as the guardián of Rolla B. Watson."

He further alleges that, for a valuable consideration, he sold his undivided one half interest in said farm to Robert C. Monroe and that his brother, W. R. Monroe, deceased, in his lifetime conveyed his undivided one half interest in said farm to Mary A. Monroe, his wife, by deed dated December 24, 1900, without consideration and for the purpose of escaping his liabil-

ity for the indebtedness alleged to be due from the said S. F. Monroe, surety as aforesaid, and that his wife knew of this fact.

He further alleges that Rolla B. Watson, the ward of A. B. Watson, has brought suit upon the bond of his guardian, in which the said S. F. Monroe is surety, against him and the administrator of the estate of W. R. Monroe, deceased. He also asserts that, upon exceptions filed to the account of himself and W. R. Monroe, as executors of said S. F. Monroe, the orphans' court of Luzerne county entered a judgment against them for the sum of $2,555.38, which said judgment, as appears elsewhere in the record, was made up of surcharges made against them, because the said estate was insolvent.

The plaintiff further represents that Mary A. Monroe, the defendant, has commenced proceedings in partition against Robert C. Monroe and that a master has been appointed to make partition and allotment of said homestead farm of said S. F. Monroe, deceased; "that the master has found that the same cannot be divided, has valued the same at $2,150, and has fixed the first day of May next for the purpose of making allotment of said farm."

He closes his bill with this allegation: " That, if said land be allotted to said plaintiff (plaintiff in the proceedings in partition) or sold to a stranger, your orator is informed by counsel and believes that the same will be discharged from the lien and collection of any indebtedness which the said Rolla B. Watson may eventually establish against your orator and his said deceased co-executor."

It is not necessary for us to determine what standing Rolla B. Watson, were he the plaintiff, alleging the facts above recited, might have under the principles decided in the cases quoted above. Even he, however, would have no lien upon the land, the statutory period within which such a lien exists having long since expired.

Upon the facts, as stated by the plaintiff in his bill, the situation is this: If Rolla B. Watson should succeed in recovering judgment against the executors of S. F. Monroe and, if the plaintiff should pay that judgment, he would, by right of subrogation, if such right were asserted, become a creditor of the estate of his deceased brother. He nowhere alleges in his bill,

however, that he has paid anything, that he is liable to pay anything, that he will pay anything or that he can pay anything. How then can he be regarded, under such contingencies, as a creditor of his brother's estate and entitled to the protection which is given a creditor even when his claim is not reduced to judgment under the cases which we have cited? The plaintiff is not only not a creditor of his deceased brother but may never become one. The language of the present chief justice, in Artman v. Giles, 155 Pa. 409, changed to suit the circumstances of this case, is not inapt. To have granted an injunction in the present case " would be going a decided step further than any case adjudicated and in opposition to established principles. The subject is not without serious difficulty in either aspect. That the present practice affords some opportunities for fraud must be conceded. . . . But, on the other hand, the contrary practice would be susceptible of enormous abuse. . . . ' A rule of procedure which allowed any prowling creditor, before his claim was definitely established by judgment and without reference to the character of his demand, to file a bill . . . . to impeach transfers or to interfere with the business affairs of the alleged debtor would manifestly be susceptible of the greatest abuse. A more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants : ' Wait on Fraudulent Conveyances, sec. 73."

For these reasons, we think the demurrer to the plaintiff's bill was properly sustained.

We are unable to see that the amendment proposed by the plaintiff would, if allowed, have in any way improved his standing. There was no error, therefore, in denying his motion to amend.

The decree of the court below " that the bill be and is dismissed with costs " is, therefore, affirmed, and the appeal dismissed at the costs of the appellant.