# Appeal of Golden *et al.*

1. After a voluntary assignment for the benefit of creditors has been duly executed and delivered, neither the assignor nor his assignee, nor both together can defeat the trust thereby created.

2. Immediately upon the delivery of a voluntary assignment, the legal title to all the property intended to be conveyed, passes to the assignee and a trust is raised in favor of the creditors.

3. If the assignee neglects or refuses to do his duty, the court will, at the instance of a creditor, either compel him to perform it or substitute another in his place.

4. A reconveyance of an assigned estate can only be properly accomplished by proceeding under the Act of May 4th, 1864, which provides that, after notice by advertisement for such length of time as may be ordered by the court, if it be made to appear to the satisfaction of the court having jurisdiction of the accounts of the assignee, that all debts are paid or released, then the balance may be reconveyed and the deed of reconveyance shall be acknowledged in open court.

5. Public policy prohibits either of the parties to a voluntary assignment from proving a secret provision contrary to that expressed in the assignment.

6. The fact that a judgment creditor has issued an attachment execution against money of an assignor in the hands of third persons, will not operate as a waiver of his right to insist on the enforcement of the trust.

October 16th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Court of Common Pleas of *Armstrong county :* Of October and November Term 1885, No. 202.

This was, in the court below, a petition by William F. Rumberger and Mary A., his wife, in right of said Mary, for a cita-

tion upon John Murphy, assignee of Edward S. Golden under a voluntary assignment for the benefit of creditors, to show cause why he should not be dismissed and another assignee appointed.

The petition alleged that on November 16th, 1881, E. S. Golden made a voluntary assignment to John Murphy in trust for his creditors; that the said John Murphy has failed and neglected to file an inventory and appraisement of the estate and effects so assigned, to give bond or to qualify himself in any manner as assignee as required by law. It also set forth that one of the petitioners, Mary A. Rumberger was, on the day of the assignment, and still continued to be, a creditor of the assignor and interested in the assignment: and prayed for a citation on John Murphy to show cause why he should not be dismissed as assignee and a successor appointed; and also for such other rules and orders as may be necessary and proper.

Upon this petition, a citation was awarded and subsequently Murphy filed the following answer:

1st. That neither Wm. F. Rumberger nor Mary A. Rumberger is a creditor of E. S. Golden, nor entitled to any benefit under the alleged assignment.

2d. That the alleged assignment was never delivered for execution; but was recorded by mistake—was thereafter cancelled in writing and cancellation recorded in Armstrong county, and was acquiesced in by all the creditors of E. S. Golden, and especially by the petitioners, who wholly ignored it and proceeded by adversary process and did *secure* their alleged indebtedness.

Petitioners filed a reply and the matter came before the court for a hearing, when it appeared from the evidence submitted that the deed of assignment had been duly executed and delivered on November 16th, 1881, and recorded by the assignee on the following day. Without having done anything in the meantime towards the execution of the trust, the assignee, on April 12th, 1882, for a nominal consideration reconveyed all the assigned property to his assignor. In the deed of re-assignment, he recites the execution, delivery and recording of the assignment, and that "no action or proceedings has ever been had or taken under or pursuant to said assignment, but upon further consideration the said E. S. Golden has discovered that the said assignment was wholly unnecessary, and that he is abundantly able to meet all his financial engagements and pay all his debts without the sale or sacrifice of any of his property, real or personal."

It appeared that no notice of this re-assignment was given to the creditors, nor was it made under any authority from the court. It further appeared that a suit had been brought

[Golden's Appeal.]

against Golden by W. F. Rumberger and Mary A., his wife, in right of the wife, upon which judgment was entered for the plaintiffs for $1,939.30, November 18th, 1881. On this judgment the plaintiffs issued an execution attachment, June 12th. 1882, for the purpose of seizing the debt in the hands of the administrators of J. E. Brown, and on the same day the attachment was served on the administrators. August 24th, 1883, the plaintiff obtained a rule to show cause why judgment should not be entered against the administrators. The prothonotary testified, however, that this suit still remained open upon the record, that there never were any interrogatories served on Brown's administrators and no appearance was entered for them.

Golden testified as follows: "When I made the assignment in this case I was not certain whether my estate would pay all my debts, and made the assignment for the purpose of putting all my creditors unsecured upon an equal footing. I handed the assignment to John Murphy and explained to him at the time that no steps were to be taken towards its execution until I had time to make a calculation and estimate of my property and debts, and if upon such calculation I found myself able to pay my debts, I would not have the assignment executed at all, but would withdraw it." . . . . . . "When I delivered the assignment to Mr. Murphy, my recollection is that I told him to record it within thirty days unless I desired otherwise."

Murphy testified as follows: "I received the assignment from Mr. Golden. At the time Mr. Golden made the assignment he told me to hold it over until he would make a calculation of his indebtedness, and that he thought he would be able to pay every dollar he owed. It was some time afterwards that Mr. Golden came to me and said that he had made a calculation and he thought he would be able to have his affairs all fixed up without the assignment, and asked me to have the assignment cancelled. I afterwards cancelled the assignment in writing."

The court, NEALE, P. J., vacated the appointment of Murphy, filing the following opinion :

The evidence in this case exhibits the fact that an assignment for the benefit of creditors was duly executed by said E. S. Golden, under and by which John Murphy was appointed assignee, which assignment deed was duly delivered to said assignee and by him filed for record. Under the English rule this would not be irrevocable until the creditors to be benefited by the assignment would accept. But under the law of this Commonwealth the assignment takes effect from the time of the execution and delivery, and the interest of the creditors

then attaches, and thereafter it is irrevocable by the assignor.. We know of no power of the court without the assent and con- currence of the creditors (*cestui que trustent*) by which the assignment may be set aside where the proceedings are regular, or at the mere instance of the assignor or assignee.

The deed of assignment having vested the estate in the creditors to the extent of their respective interests, their assent to the revocation is imperative, unless they join in a reconveyance, equal in effect to the conveyance made by the assignor.

The facts set up in the answer of the assignee, and the evidence in the case, are not sufficient to avoid the assignment.

A creditor affected by the assignment has made the applica- tion to have the assignee dismissed, and showing that his rights have been prejudiced by the delay of the assignee, and it appearing that the assignee has wholly failed to comply with his duty as assignee and having failed to file a bond, and this delay having been for a period of years we are constrained to yield to the prayer of the petitioner as to his dismissal, and do now order that appointment vacated.

And that the purposes and objects of the assignment may be fully carried out, direct that Ross Reynolds be appointed assignee upon proper bonds being filed and do now make this rule absolute as prayed for.

Reynolds having declined to act, the court subsequently appointed Simon Truby, Jr.   Whereupon Golden and Frances E. Tanner, to whom Golden had after Murphy's re-assignment, assigned an interest in a judgment held by him, took this appeal. assigning for error the granting of the petition and the conclu- sions of the court in the above opinion.

*David Barclay* (*M. F. Leason* with him), for appellants.— The assignment was recorded: but against the express will and intent of the assignor.   What interest could the recording of it vest in the assignee?   It was not delivered for record, but was put on record—not wilfully, but mistakenly—against the will, purpose and intent of Mr. Golden.   It was not then, in point of fact, his deed.   A voluntary assignee cannot create a trust against the intention of the assignor.

Mrs. Rumberger was an adversary claimant.   She cannot, therefore, claim under the assignment:   Geist's Appeal, 8 Out., 351.; Jefferis's Appeal, 9 Casey, 39.

The right to treat an assignment as a nullity, and proceed- ing as though it had not been made, is undoubted:  Burrill on Assignments, 2d ed., 595.   Mrs. Rumberger repudiated the assignment and put herself in hostility to it.   This she had a right to do, but in doing so she is surely estopped from claim-

ing under it, and from any attempt at its enforcement: Thompson v. Fisher, 1 Harris, 313, 314.

The acquiescence of creditors in the reconveyance of John Murphy induced Mrs. Tanner to avail herself of the special assignment made to her, and they are estopped from denying its validity: Evans's Appeal, 31 P. F. S., 278.

*Joseph Buffington* (*Orr Buffington* and *Calvin Rayburn* with him), for appellee.—The moment an assignment for the benefit of creditors is placed by the assignor or any one interested in the office of the recorder of deeds of the proper county, and within the prescribed time, the beneficial interest of the creditors, the *cestuis que trust*, are certainly and completely vested and it is totally immaterial when the assignee accepts the trust or whether he ever accepts it at all: Marks's Appeal, 4 Nor. 234.

The assignment was either an attempt to hinder, delay and defraud creditors with tools which have proved two-edged, or, if it was an honest purpose, there was no mistake. There is no middle ground.

What was the purpose of delivering it to Murphy if it was not to secure creditors, and if it was given to him with that intent a certain interest vested in the creditors that minute, and no subsequent acts of assignor or assignee could affect it: Seal v. Duffy, 4 Barr, 277; Scull v. Reeves, 2 Green's Ch., 131.

Mr. Justice STERRETT delivered the opinion of the court, October 26th, 1885.

Voluntary assignments for the benefit of creditors are so regulated by statute and governed by principles of equity that when duly executed and delivered neither the assignor nor his assignee, nor both together, can defeat the trust thereby created in favor of creditors. A failure to record the assignment within thirty days after its execution places it in the power of any creditor to proceed in the collection of his claim as though no assignment had been made; but even that neglect does not extinguish the trust as to other property than that taken in execution, or as to other creditors who choose to recognize the assignment, and insist on its execution: Read v. Robinson, 6 W. & S., 332; Seal v. Duffy, 4 Barr, 274. These cases are also authority for the proposition that, immediately upon the delivery of a voluntary assignment, the legal title to all the property, intended to be conveyed by it, passes from the assignor to the assignee, and a trust in favor of creditors of the former takes effect immediately. Equity will not suffer the trust thus created to fail by reason of the misfeasance or non-feasance of the trustee named in the deed,

because a trust, unlike a naked power, is ever imperative and binding on the conscience of the agent appointed to execute it; and, if he refuses or neglects to do his duty, a chancellor will either compel him to perform it, or substitute another hand to uphold the trust and carry it into effect.

In the case before us, the deed of assignment was executed and delivered to the assignee November 16th, 1881, and recorded by him next day. Without having done anything in the meantime towards the execution of the trust, the assignee on April 12th, 1882, for a nominal consideration, reconveyed all the assigned property to his assignor. In the deed of re-assignment, he recites the execution, delivering and recording of the assingment, and "that no action or proceeding has ever been had or taken under or pursuant to said assignment, but upon further consideration the said E. S. Golden has discovered that the said assignment was wholly unnecessary, and that he is abundantly able to meet all his financial engagements and pay all his debts without the sale or sacrifice of any of his property, real or personal." The re-assignment was without either notice to the creditors or authority from the court having jurisdiction of the trust.

The second section of the Act May 4th, 1864, Purd. 123, pl. 24, provides: "Whenever it shall be made to appear to the satisfaction of the court having jurisdiction of the accounts of an assignee under any assignment in trust for creditors, either upon the report of an Auditor or otherwise, after notice by advertisement for such length of time as may be ordered by the court, that all the undisputed claims upon the assigned fund or estate have been paid or released, and security to the satisfaction of said court, as hereinafter set forth, shall be given for the payment of any and all claims in dispute, the said court may order and direct the assignee to re-convey to the assignor, all the assigned estate remaining in his hands and possession, and all outstanding interest in the assigned estate; and the deed of reconveyance shall be acknowledged in open court, and entered among the records thereof; and thereupon the said estate shall be holden free and discharged from any and all of the trusts of said assignment."

This is the only statutory provision for reconveyance of the assigned estate, and it cannot be legally done in any other way, certainly not without the assent of all the *cestuis que trustent*. It is not pretended that such assent was given in this case. We do not mean to say, however, that the execution of a trust and re-investiture of title in the assignor, as to residue of the trust property, may not be presumed from long lapse of time, but that is not an element of the case under consideration.

In June, 1883, on petition of Rumberger and wife, creditors, etc., the assignee was cited to appear and show cause why he should not be discharged. In answer to the citation, he denied that petitioners were creditors of the assignor, or entitled to any benefit under the assignment, and alleged in substance that the deed of assignment was never delivered for execution, that it was recorded by mistake, and shortly thereafter was cancelled by the reconveyance duly recorded and acquiesced in by all the creditors and especially by the petitioners who wholly ignored the alleged assignment and proceeded by adversary process to secure their alleged claim. The court found, very properly, that petitioners were creditors of the assignor and, as such, interested in the execution of the trust; that the assignee had wholly neglected his duty in the premises to the prejudice of petitioners and other creditors. The logical result of this finding was the decree dismissing the assignee and appointing another trustee in his stead. There was no error in this conclusion nor in the proceedings by which it was reached. The assignee did not deny the execution, delivery and recording of the assignment. He merely alleged it was not delivered for execution, that it was recorded by mistake, and was afterwards cancelled by reconveyance of all the assigned property. If it was not delivered for execution, for what legitimate purpose was it delivered? Was it for the purpose of being held during all or part of the thirty days allowed for recording, and then treated as valid, if circumstances required that it should be so regarded, or was it to be cancelled or destroyed if, in the meantime, it was deemed unnecessary to use it? Such a purpose is manifestly illegal, and furnishes no excuse for non-performance of duties imposed by law on the assignee. If it be true that the assignment was not delivered for the purpose of being executed, or that it was recorded by mistake, it is somewhat singular that neither of these facts is recited in the deed of reconveyance made when the transaction must have been fresh in the memories of the parties thereto. As we have seen, the recitals in the paper referred to declare that a general assignment for the benefit of creditors was duly executed, delivered and recorded. There is not even an intimation of mistake in recording or of delivery for any other purpose than execution. In fact, there could be no legitimate delivery for any other purpose; and public policy forbids that either of the parties to such a deed should be permitted to prove a secret purpose so contrary to that expressed in the deed itself.

Under the circumstances disclosed by the record, the issuing and service of the execution attachment on the administrators of James E. Brown cannot be considered a waiver by

[Brown *v.* Cowan & Steele.]

the appellees of their right to insist on the enforcement of the trust. It was doubtless prompted by the unauthorized reconveyance of the trust property, and resorted to for the purpose of acquiring a lien on the fund in case the reassignment should be adjudged effective for the purpose of reinvesting the assignor with title to the trust property.

We are clearly of opinion the court was right in dismissing the assignee, and appointing another trustee in his stead.

　　　　　　　Decree affirmed, and appeal dismissed at the costs of the appellants.