## Assigned Estate of D. H. Wenger.    Appeal of W. A. Susong.

*Practice, Superior Ct.—Appeals—A bad reason will not invalidate a good ruling.*

An appellate tribunal looks to the merit of a decree brought before it for review, and will not reverse merely because some or all of the reasons relied on by the court are not tenable. A bad reason does not invalidate a good ruling; and if, for any reason presented by the record, the decree appealed from can be supported it should be upheld.

*Assignment for creditors—Fraud—Standing of simple contract creditor.*

In distribution of an assigned estate a simple contract creditor, who establishes his claim, has standing to attack a judgment given in fraud of creditors.

*Assignment for creditors—Distribution—Bona fides—Judgment to wife—Auditor's finding—When conclusive.*

A judgment given by a husband in failing circumstances to his wife will not be set aside as fraudulent when held to be bona fide by the auditor, if the evidence as to its being given for a bona fide debt is such that, if the claim had been tried before a jury on its merits, it would have been erroneous for the court to withdraw the facts from their consideration, the evidence being sufficient, if believed, to sustain a verdict in favor of the bona fides of the judgment.

Argued March 16, 1896. Appeal, No. 8, March T., 1896, by W. A. Susong, from decree of C. P. Franklin Co., distributing balance appearing upon the first and final account of the assignee for the benefit of creditors of D. H. Wenger and wife. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Exceptions to auditor's report distributing balance of assigned estate.

It appears from the record that on August 28, 1893, between 8 and 9 o'clock in the morning, D. H. Wenger confessed judgment on a single bill in favor of his wife, Mary C. Wenger, for the sum of $300. On the afternoon of the same day Wenger and wife executed a deed of assignment for the benefit of his creditors. At the meeting before the auditor, W. R. Gillan, appointed to distribute the balance, W. A. Susong, the appellant, appeared and proved his claim against the assigned estate,

amounting t $795.79. The wife's judgment was offered in evidence before the auditor, and objection stated on the record by the appellant " That the said judgment was fraudulently and collusively confessed for the purpose of delaying, hindering and defrauding the creditors of D. H. Wenger, the assignor." The question as to the validity of the judgment was submitted, by both parties, to the auditor without either party demanding an issue, and evidence was taken on behalf of and against the judgment to the wife.　Such evidence tended to show that the wife had received from sources other than her husband at different times moneys amounting to $355.50, and had given the husband such moneys in various sums many years before the assignment, that he had used them as his own without any agreement to pay interest.　The auditor found that the evidence produced before him " does not warrant the finding that the judgment was fraudulently and collusively confessed for the purpose of delaying, hindering and defrauding creditors ; " also that the judgment was given for a bona fide debt due the wife by her husband.

The auditor found as conclusions of law : (1) That he had jurisdiction to inquire into the validity of the judgment ; (2) that the burden was upon the plaintiff in the judgment to prove that it was given bona fide ; (3) the wife having shown that the husband had received the money, the burden of proving that it was a gift and not a loan is upon those who assert it ; (4) that the wife was not entitled to interest on her judgment prior to 26th of August, 1893.

Exceptions were filed before the auditor to his report, excepting to his findings of law and fact relative to the wife's judgment.

The court, STEWART, P. J., dismissed the exception, holding, inter alia, that "had the auditor's conclusions been adverse to the judgment we would have been obliged to withdraw our approval from his report ; not that the evidence in the case so closely establishes the bona fides of the transaction that an adverse finding could not have been sustained, but because such an inquiry was not within the duty and power of the auditor. The same reasons which prevents us from examining into the exceptions, should have precluded the investigation by the auditor."

*Errors assigned* were, (1–11) in dismissing appellant's exceptions to the auditor's findings of fact and conclusions of law; (12) in holding that appellant had no standing, as a general creditor, to impeach the judgment of Mary C. Wenger, the appellee.

*W. K. Sharpe*, of *Sharpe & Sharpe*, for appellant.—By virtue of the deed all the creditors are at once seated upon the trust: Klapp's Assignees v. Shirk, 13 Pa. 589; Golden's Appeal, 110 Pa. 581; Marks' Appeal, 85 Pa. 231. It follows, therefore, that the appellant had a status to assail this fraudulent judgment: Fowler v. Kingsley, 87 Pa. 449. The case of Artman v. Giles, 155 Pa. 409, is not in point, as that had to do with a distribution under a sheriff's sale after an execution had been issued prior to the assignment for benefit of creditors. If the appellant has a status to contest the judgment there can be no possible doubt as to the jurisdiction of the auditor: Meckley's Appeal, 102 Pa. 536; Sponsler's Appeal, 127 Pa. 410.

*Linn Harbaugh*, for appellee.—In Fowler v. Kingsley, 87 Pa. 449, although the claimant was without judgment, he had a statutory lien which was regarded as sufficient to place him in position to contest a fraudulent judgment; but the later case of Artman v. Giles, 155 Pa. 409, upon which the opinion of the court below was based, was decided with Fowler v. Kingsley in full view.

OPINION BY WICKHAM, J., November 9, 1896:

D. H. Wenger, being in embarrassed circumstances, confessed a judgment to his wife, Mary C. Wenger, and at a later hour, on the same day, made an assignment of all his estate for the benefit of his creditors.

The appellant here, a simple contract creditor of the assignor, attacked Mrs. Wenger's judgment before the auditor appointed to report distribution of the assigned estate, alleging that it was collusively given to hinder, delay and defraud the husband's creditors. The learned auditor after considering the evidence pro and con, found and reported that the judgment was given to secure an honest debt due from the husband to the wife. His findings of fact in regard to this matter were

assailed through numerous exceptions filed in behalf of the appellant. The learned judge of the court below ignored and dismissed the exceptions, giving as his only reason therefor his opinion, that the learned auditor had no power to inquire into the validity of the judgment at the instance of a creditor having neither lien nor judgment himself.

The dismissal of each exception is separately assigned for error here, and error is also alleged in the view taken by the court below as to the standing of the appellant to impeach the judgment and in the decree confirming the auditor's report. In view of the nature of the case and of the specifications of error, the evidence offered before the auditor should have been printed in the appellant's paper-book. This, however, has not been done. An appellate tribunal looks at the merits of a decree brought before it for review, and will not reverse merely because some or all of the reasons relied on by the court below are not tenable. A bad reason does not invalidate a good ruling: Susq. Mut. Fire Ins. Co. v. Gackenbach, 115 Pa. 492. Sometimes the courts of first instance give no reasons whatever for their decrees—certainly a careless and reprehensible practice, but the decree is not thereby necessarily invalidated. Again, it may happen that where reasons are assigned, better ones may be found in the record. If for any reason presented by the record, the decree appealed from can be supported, it should be upheld.

Owing to the peculiar circumstances of this case, we have, in considering the assignments of error, departed from our usual practice and examined the unprinted evidence brought up by the record. This examination satisfies us that, conceding that the learned judge of the court below was mistaken in holding, as a matter of law, that the appellant could not be heard to deny the validity of the judgment, still, to send the case back, as requested, for consideration of the ignored exceptions would not aid the appellant in the least. We are of the opinion, that had Mrs. Wenger's claim been tried on its merits before a jury, it would have been erroneous for the court to withdraw the facts from their consideration. The evidence, if believed, was sufficient to sustain a verdict in favor of the *bona fides* of the judgment. It was shown that Mrs. Wenger received money from her grandfather's estate and property from sources outside

of her husband. This money and the proceeds of the sale of the property, amounting to more than the judgment, went into her husband's hands. It was for the auditor to say, under all the circumstances, whether the husband took the same as loans or gifts. We think that the learned judge of the court below would not have been warranted in reversing the learned auditor's findings of fact. The decree can therefore be sustained on the ground that the wife's judgment was given to secure a valid debt.

But, we are unable to assent to the view that the appellant had no status to contest the judgment. In Fowler v. Kingsley, 87 Pa. 449, the right of a simple contract creditor of a decedent's estate to attack a fraudulent judgment, given by the latter in his lifetime, was fully recognized because of the creditor's statutory lien. Mr. Justice PAXSON, answering the objection that the plaintiff in the bill had no judgment, very aptly says, " We think, therefore, that the mere fact that the complainants had not recovered judgment against Mr. Winton was not of itself sufficient to oust the equity jurisdiction of the court. . . . It was urged by the appellee that they should have brought suit at law against the administrator, if there be one, and if not, they should have raised up an administrator for that purpose. That proceeding would have been a vain thing and *lex neminem cogit ad vana seu inutilia.*"

Since that decision, we are informed that the practice prevails very generally throughout the state to permit fraudulent judgments to be attacked directly in the orphans' court, by any creditor likely to be injured.

In the present case the rights of the general creditor are, if anything, stronger than in the one just cited. He has more than a lien on the assigned estate, being the equitable owner thereof. The property is held in trust for him and the other creditors: Mark's Appeal, 85 Pa. 231: Golden's Appeal, 110 Pa. 581. To compel him to obtain a judgment would, as was said in Fowler v. Kingsley, supra, be a " vain thing." There is no necessity for circuity of action. Every disputed question can be easily, cheaply and speedily decided through the audit. Issues may be granted, if necessary, and the validity of the creditor's claim, if disp· ted, may be first determined. To force a simple contract creditor, whose debt may be, as in the case

before us, concededly just, to obtain a judgment before he can be heard to assail the fraud perpetrated upon him, and then remit him to a common law action against the persons who have, through the forms of law, carried from under the very nose of the court the money to which he was justly entitled, would too often be a practical denial of justice. A dishonest debtor might safely collude with an equally dishonest and more unprincipled and irresponsible friend, confess judgment to the latter for an amount greater than the value of the debtor's estate, and immediately thereafter make an assignment and use the court to aid in consummating the knavish scheme. To sanction this would seem almost like holding that one who sees his goods being taken by a thief should stand idly by, because the offender, in case of conviction, would be ordered to make restitution. Ordinarily, it would be impossible to prove the assignment itself fraudulent, hence it could not be set aside. The plain and common sense way of dealing with the defrauders is to prevent them from taking their plunder out of court, and this, we conceive, can be done without violating law or precedent. The practice as to the distribution of the proceeds of a sheriff's sale is governed by the act of 16 June, 1836, section 93, P. L. 778, which directs the payment to the debtor of the surplus fund after satisfying lien creditors; therefore decisions based on that act give us no light here. The case of Artman v. Giles, 155 Pa. 409, relied on by the appellee is, when examined closely, not in conflict with the view herein expressed. So far as that case touches the matter now under consideration, it decides nothing more than that a court of equity will not, at the suit of a simple contract creditor, interfere by injunction to prevent the collection of a judgment given to defraud the judgment debtor's creditors. It is merely another application of the familiar rule, that equity will not enjoin where the plaintiff has not first established his right by an action at law. What remedy the injured party might be entitled to in the court having jurisdiction of the assignment and controlling the distribution of the assigned estate, was not decided. From expressions in the opinion, however, it is evident that the tribunal last mentioned was deemed to have powers and authority in the premises not possessed by a court of equity proper. It may be observed too, that the status of a general creditor, as an equitable owner

of the assigned estate, and therefore occupying a like if not a better position than similar creditors of a decedent having only a lien, was not considered in Artman v. Giles.

The courts should be liberal in encouraging means to defeat the protean forms of fraud, which in modern times have largely supplanted the ancient methods of force. As far as possible, every easily handled legal weapon should be made available to the honest man who seeks to protect himself against rogues. We do not mean to say, however, that well established rules of law should be transgressed or unduly strained to accomplish this result. Was any real principle abrogated by the decision in Fowler v. Kingsley? Certainly not. The only good reason for refusing a simple contract creditor the right to assail a judgment given to defraud him was properly held not to exist in that case and the maxim, "*cessante ratione legis, cessat et ipsa lex*" at once became applicable. So in the case of an assignment for the benefit of creditors *a fortiori* a judgment given to defraud creditors should, in proceedings to distribute the assigned estate among those entitled thereto, be held subject to investigation at the instance of any creditor intended to be defrauded. The investigation takes place through the aid of machinery provided for the purpose, under the eye of the court controlling the distribution. A pretended creditor can give little trouble to a real one, as he may be called on to establish his claim before he is allowed to interfere with the claim of any one else. No honest claimant to the fund is likely to suffer. Inducements to cheat are greatly lessened and attempted fraud may often be prevented. Prevention is always better than redress. It may be added that in the case in hand the very decree which established the justice of the appellant's claim, and his right to share in the assigned estate, also denied his right to assail a judgment given, if his theory were correct, to defraud him.

For the reasons above set out, we are forced to conclude that the learned auditor had jurisdiction to inquire into the validity of the judgment.

The decree is affirmed and the appeal dismissed, with costs to be paid by the appellant.